UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-21386-LEIBOWITZ/AUGUSTIN-BIRCH

OR SABAG, as Personal Representative
of the Estate of JAKLIN SABAG,

      Plaintiff,

v.

VOLVO GROUP NORTH AMERICA, LLC,
a foreign limited liability company,

      Defendant.

_____/

**DEFENDANT VOLVO GROUP NORTH AMERICA, LLC'S
MOTION TO STRIKE THE UNTIMELY SUPPLEMENTAL REPORT
OF PLAINTIFF'S EXPERT, SHAWN HARRINGTON**

Defendant Volvo Group North America, LLC ("VGNA"), pursuant to Rules 26 and 37, Federal Rules of Civil Procedure, moves to strike the May 20, 2026 supplemental report of Plaintiff's accident reconstruction expert, Shawn Harrington. *See* ECF No. 40-4, Harrington Supplemental Report. The Court imposed a deadline for Plaintiff to serve both original and rebuttal reports. Mr. Harrington's supplemental report was served on the morning of his May 21, 2026 deposition—over two months after the deadline to serve even rebuttal reports. Mr. Harrington's untimely report contains not only rebuttal opinions about VGNA's experts' reports, but reflects *new* accident reconstruction opinions and new testing conducted by Mr. Harrington on May 8, 2026. VGNA is unduly prejudiced by these late-disclosed opinions and thus requests that the Court strike the untimely report, while prohibiting Mr. Harrington from providing opinions beyond the scope of his original report.

145110273.4

## I.     BACKGROUND

On January 23, 2026, this Court entered an Order setting February 6, 2026, as the deadline for Plaintiff to disclose expert witnesses and provide their reports.  ECF No. 24 at 1.  The same Order set a deadline of March 18, 2026 for Plaintiff to "disclose any rebuttal expert witnesses and provide their reports."  *Id*.  Mr. Harrington's May 20, 2026 supplemental report, which was served on the morning of his May 21 deposition, missed even the latter deadline by over two months.

Mr. Harrington's untimely report contains not only rebuttal opinions addressing the opinions of VGNA's experts, Dr. Kuykendal and Mr. Wilcox, but also reflects additional accident reconstruction opinions, including new opinions on the claimed location of the Nissan Altima in front of the truck and Mrs. Sabag's headway, as well as new "supplemental testing" conducted by Mr. Harrington on May 8, 2026.  This testing applied what Mr. Harrington describes as "the most conservative headway distance" of six feet, rather than the 10- or 13-foot headway used in his earlier testing.  ECF No. 40-4, Harrington Supplemental Report at 29.  Contrary to his initial opinion that Mrs. Sabag's headway was approximately 18 feet in front of the Truck, Mr. Harrington's supplemental opinion is that the distance the truck traveled from stop to the point of impact was 10.5 feet, with a 4.5-foot margin of error.  *Id.* at 23, 25.  Mr. Harrington explains in the supplemental report that he considers the six-foot distance to be a "reasonable floor for the headway distance between the Volvo and Ms. Sabag at the time that the Volvo began to accelerate."  *Id.* at 25.  Due to this "much smaller travel distance," the speed at impact with these assumptions is approximately four miles per hour.  *Id*.  Mr. Harrington conducted this testing using a 2019 Freightliner Cascadia equipped with Detroit Assurance 4.0.  *Id*. at 29.[1]  Mr. Harrington does not

---

[1] The description of Mr. Harrington's "supplemental testing" in the untimely report concludes: "More data and test materials will be provided for this testing as soon as possible."  ECF No. 40-4, Harrington Supplemental Report at 29.

explain why he did not test this "most conservative headway distance" when he initially conducted his accident reconstruction testing for this case in December 2025.  If the Court allows Mr. Harrington's supplemental report to stand, VGNA's experts must re-analyze his opinions and potentially supplement their reports as well.  At a minimum, VGNA's experts will need to address at trial the new opinions Mr. Harrington disclosed well after the deadline imposed by the Court's scheduling order.

## II.    LEGAL STANDARD

Expert witness disclosures "must" be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  Additionally, expert disclosures "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them; [ ] the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them."  Fed. R. Civ. P. 26(a)(2)(B).

A party cannot supplement expert reports to "cure a major omission or to remedy an expert's inadequate or incomplete preparation."  *Lincoln Rock, LLC v. City of Tampa*, 2016 WL 6818959, at *4 (M.D. Fla. Nov. 18, 2016).  Rule 26(e) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Id*. at *5 (quoting *Cochran v. Brinkmann Corp*., 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009)); *see Companhia Energetica Potiguar v. Caterpillar Inc*., 2016 WL 3102225, at *6 ("[A] party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report."). "Rather, Rule 26 imposes a duty on parties to comply with the disclosure deadlines. [I]t grants them no right to produce information in a belated fashion." *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012) (internal quotation marks and citations omitted).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (internal quotation marks and citations omitted).   Thus, under Rule 37(c)(1), a party failing to timely disclose expert opinions may not present such opinions at trial, a hearing, or on any motion unless the failure to disclose was substantially justified or harmless:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1).

Rule 37(c)(1) contemplates strict adherence to the disclosure requirements of Rule 26. Accordingly, unless the nondisclosure was justified or harmless, a party may not rely on the late disclosed expert opinion. *See Weaver v. Lexington Ins. Co.*, 2007 WL 1288759, at *1 (M.D. Fla. May 2, 2007) (Rule 26 requirements are "not a matter to be ignored or . . . trivialized"); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) ("[A] supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed."); *see also Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718–19 (11th Cir. 2019) (affirming exclusion of supplemental expert reports that were filed on the eve of the expert's deposition and over a month after the close of the discovery); *Dyett v. N. Broward Hosp. Dist.*, No. 03-60804-CIV, 2004 WL 5320630, at *2 (S.D. Fla. Jan. 21, 2004) (granting motion to strike untimely disclosed expert).

Courts apply a five-factor test to determine substantial justification or harmlessness: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *See Mobile Shelter Sys.*, 845 F. Supp. 2d at 1250–51.

## III. ARGUMENT

The Court should strike Mr. Harrington's supplemental report because it is untimely, and the disclosure is neither substantially justified nor harmless.  Plaintiff served the report over three months after Plaintiff's expert disclosure deadline, two months after the rebuttal deadline, and on the morning of Mr. Harrington's deposition.  The timing of the supplemental report relative to Mr. Harrington's deposition prejudiced VGNA.  VGNA proceeded with Mr. Harrington's deposition on May 21, 2026 and continued the deposition to May 26, 2026 due to scheduling logistics, although VGNA reserved its right to reopen the deposition in light of Mr. Harrington's belated disclosures that counsel did not have a sufficient opportunity to review.  Notably, VGNA has not had an opportunity to depose Plaintiff's design-defect expert, Peter Leiss, regarding his design opinions relating to Mr. Harrington's new testing and untimely report.

Regarding the first factor outlined in *Mobile Shelter Systems*, VGNA was surprised by Mr. Harrington's new testing and untimely rebuttal opinions.  Even during Mr. Harrington's deposition on May 21, 2026, counsel learned of relevant materials Mr. Harrington failed to produce contemporaneously with his supplemental report.  *See* ECF No. 40-7, Harrington Dep. Vol. I at 45:7–12 ("Q: We have not received any additional test data, the VBox information, or other videos aside from the three runs that were provided as a combined video for each test?  A: Yes.  Those need to be compiled and put together and sent to you."); *see Mobile Shelter Sys.*, 845 F. Supp. 2d

at 1251 (finding the defendants prejudiced when supplemental disclosures were made one business day before the expert's deposition because the timing deprived the opposing party of the time needed to fully comprehend the expert's opinions and satisfactorily prepare an effective cross examination).

Regarding the second factor, VGNA's ability to cure the surprise is compromised.  Mr. Harrington's opinions impact the analysis conducted by both Plaintiff's and VGNA's liability experts.  His initial reconstruction supplied the headway distance that informed the advanced driver assistance system ("ADAS") testing.  This further impacts opinions relating to design, causation, and human factors.  The opinions and testimony of Plaintiff's design expert, Mr. Leiss, demonstrate the prejudice caused by Mr. Harrington's new testing.  Mr. Leiss expressly relies upon Mr. Harrington's testing to support his own opinions about alternative design and causation.  He specifically acknowledged that Mr. Harrington's testing supports his core opinion; *i.e.,* that the DA 4.0 system would have warned the driver and that, in some tests, the pedestrian AEB activated and "prevented a collision from occurring without any driver input." *See* ECF No. 40-3, Leiss Report at 36.  One of VGNA's experts, Dr. Michelle Kuykendal, likewise confirms that "Mr. Leiss based his conclusion about the availability of a safer alternative design that could have prevented the incident on Mr. Harrington's testing."  ECF No. 40-9, Kuykendal Report at 47.

VGNA deposed Mr. Leiss on April 10, 2026, more than one month before Mr. Harrington's supplemental report was prepared.  At Mr. Leiss's deposition, he affirmed the importance of Mr. Harrington's testing to his opinions, referencing the findings on pages 36–37 of his report.  *See* ECF No. 40-5, Leiss Dep. at 37:21–38:13 (referencing conversation with Mr. Harrington as they authored their reports, "so that I could reference his findings").  VGNA could not have questioned

Mr. Leiss about how either Mr. Harrington's new six-foot testing, or the new four-mph impact-speed scenarios, informed his design opinions.

Mr. Harrington's new testing is materially different from the 10- and 13-foot testing upon which Mr. Leiss originally relied, and the new distances impact his opinions about the feasibility of a "properly tuned" system.  Because VGNA has already deposed Mr. Leiss regarding his design opinions, which rely upon Mr. Harrington's testing, the late report imposes undue and unnecessary prejudice on VGNA.  *Cook v. Royal Caribbean Cruises, Ltd.*, 2012 WL 2319089, at *3 (S.D. Fla. June 15, 2012) (supplemental expert reports served after the discovery cutoff would unduly prejudice the defendant because the defendant had already taken the depositions of the experts who offered supplemental opinions and did not have the ability to obtain supplemental opinions from its own witnesses).

The third and fourth factors—the extent to which allowing this evidence would disrupt trial and the importance of the evidence—also weigh in VGNA's favor.  At a minimum, VGNA will require time to evaluate these new materials (and new opinions) with its experts.  Dr. Kuykendal, whose testing is critical to VGNA's causation defense, must respond to Mr. Harrington's new attack on her methodology.  Likewise, Grant Wilcox, VGNA's accident reconstruction expert, must assess Mr. Harrington's new six-foot headway distance (as opposed to 10-13 feet).  Dr. Scully's human factors opinions are tied to Mr. Wilcox's reconstruction as well.

Given that Plaintiff intends to use the late-disclosed report and opinions to support key issues concerning the accident reconstruction, VGNA needs an opportunity to at least review these materials with its own experts and potentially supplement their opinions.  The evidence's importance is clear—Mr. Harrington intends to use his new testing and related untimely opinions

to support his otherwise deficient opinions that overestimated the headway between the Truck and Mrs. Sabag at the time of the accident.

Finally, regarding the fifth factor, Plaintiff offers no explanation for the belated disclosure other than Mr. Harrington's justification that he has "had an insane schedule this year."  ECF No. 40-7, Harrington Dep. Vol I. at 52:21–24.  Mr. Harrington had the evidence and ability to test the six-foot distance during his original testing in December 2025.  He did not.  That was his choice. It is too late for Plaintiff to rely upon a supplemental report that Mr. Harrington improperly assembled to "bolster [his] defective or problematic expert witness report." *Caterpillar*, 2016 WL 3102225, at *6.

## IV.    CONCLUSION

Accordingly, the Court should strike Mr. Harrington's untimely supplemental report under Rule 37(c).

### LOCAL RULE 7.1(a)(3) CERTIFICATION

I certify that prior to filing this motion, co-counsel for Volvo Group North America, LLC, Steven Klein conferred with counsel for the opposing party telephonically on June 24, 2026 in a good-faith effort to resolve this dispute, and we are unable to reach an agreement

Dated:  June 30, 2026                                   Respectfully submitted,


    */s/ Jeffrey A. Cohen*
Jeffrey A. Cohen (FBN 57355)
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
jacohen@carltonfields.com
jsalermo@carltonfields.com
trogers@carltonfields.com

miaecf@cfdom.net

Caycee D. Hampton (FBN 100922)
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Telephone: (813) 229-4307
champton@carltonfields.com

**_Attorneys for Defendant Volvo Group North America, LLC_**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 30, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jeffrey A. Cohen
Jeffrey A. Cohen (FBN 57355)

145110273.4